IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMAL A. RASHAD,

     Plaintiff,

v.                                    Civil Action No. 3:15cv655

SCOTT JENKINS,
et al.,

     Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT WHEELER'S MOTION TO DISMISS (Docket No. 8), DEFENDANTS' JOINT MOTIONS TO DISMISS (Docket No. 10), DEFENDANTS' RULE 12(b)(1) and 12(b)(6) MOTION [sic] TO DISMISS (Docket No. 13), DEFENDANTS GAIL CROOKS' AND JAYME FLANDERS' MOTION TO DISMISS (Docket No. 16) and DEFENDANTS LOWERY'S AND NEELY'S SUPPLEMENTAL MOTION TO DISMISS (Docket No. 23). For the reasons set forth below, those motions will be granted insofar as they seek dismissal for lack of subject matter jurisdiction, and they will otherwise be denied as moot as they assert other grounds for dismissal. The plaintiff's MOTION TO STRIKE, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER (Docket No. 19) will be denied.

## BACKGROUND

In his Complaint, Plaintiff Jamal A. Rashad ("Rashad") asserts a variety of claims against nine government employees in their official capacities. Those claims arise out of the following scenario, as recounted from paragraphs 1 through 74 of Rashad's Complaint (Docket No. 1).

On or about May 5, 2014, Rashad, an African-American attorney, made a written complaint to Sheriff Scott Jenkins ("Jenkins"), Sheriff of Culpepper County, Virginia, stating that Sheriff Deputy Charles Wheeler ("Wheeler") had an adulterous affair with Rashad's wife. Jenkins then assigned the case to internal affairs officer, Deputy Sheriff Tyler Armel ("Armel"). After the case was assigned to Armel, Rashad supplemented his complaint to Jenkins by alleging that Wheeler also had endangered Rashad's seven-year-old son by placing Rashad's son on his lap behind the wheel of his moving police cruiser.

For reasons neither apparent nor explained in the Complaint, on or about October 19, 2015, both Rashad's wife and Wheeler admitted "in open court" to having sexual intercourse with each other. Additionally, notwithstanding the Complaint's lack of context, Wheeler acknowledged that he admitted "to placing Plaintiff's then 7-year old son behind the wheel of his police cruiser moving on a public street" to Armel. Rashad uses these assertions to claim that Wheeler violated Virginia law

2

criminalizing adultery, criminalizing child endangerment, and restricting use of county-owned vehicles, and thus that Wheeler was in violation of the Law Enforcement Code of Ethics. Sometime more than five months after Rashad filed his complaint with Jenkins, the Internal Affairs Officer issued a decision finding that Rashad's claims were unfounded.

Rashad also made a complaint, although it is unclear when, of child endangerment to the Spotsylvania County Department of Social Services ("DSS"), which administers Child Protective Services ("CPS"). The gist of that complaint was the incident in which Wheeler allowed Rashad's son to ride in his lap in the moving police car. DSS employee, Jayme Flanders ("Flanders"), received the complaint and commenced a family assessment. Rashad asserts that Flanders did not report the complaint to the Spotsylvania County Commonwealth's Attorney's Office or the Spotsylvania County Sheriff's Office as required by law. Flanders also found Rashad's complaint to be unfounded.

Sometime after Flanders decided that Rashad's complaint was unfounded, Rashad made another complaint to the Spotsylvania Sheriff's Office about the child endangerment. This complaint was also based on the earlier claim that Wheeler had driven a police cruiser with Rashad's son on his lap. On or about December 4, 2015, that case was assigned to Detective Twyla Demoranville, ("Demoranville") and she commenced an

3

investigation. Rashad claims that Demoranville spoke with the child and with Wheeler and both admitted the alleged driving incident. Further, Rashad asserts that, before Demoranville fully investigated Wheeler, she conspired with Deputy Commonwealth's Attorney Matthew Lowery ("Lowery") and decided not to arrest Wheeler on Lowery's recommendation. Rashad theorizes that Demoranville did not want to embarrass her colleague, Flanders, by arresting Wheeler after Flanders previously had dismissed Rashad's DSS complaint as unfounded. Rashad implicates Spotsylvania County Sheriff Roger L. Harris ("Harris") by virtue of his responsibility "for assuring that officers under his command perform their duties honestly, competently and in accordance with law." (Compl. ¶ 47).

Lastly, Rashad made a Freedom of Information Act request with the Spotsylvania County's Commonwealth Attorney, William F. Neely ("Neely"), which was referred to Lowery. On or about November 21, 2015, Rashad and Lowery corresponded by way of email. Rashad claims that Lowery first said that DSS had not notified the Commonwealth's Attorney's Office of his child endangerment complaint. In subsequent emails the same day, Lowery allegedly lied to Rashad by stating that the complaint had been investigated by the Spotsylvania Sheriff's Office and had been determined to be unfounded. Rashad concludes that Lowery lied because Demoranville was purportedly not assigned to

4

the case until December 4, 2015. Rashad further speculates that Lowery advised Demoranville not to arrest Wheeler but does not allege any facts to support the assertion.  Lowery did not prosecute Wheeler.

Simply put, Rashad's argument is that his repeated complaints were mishandled and incorrectly resolved as unfounded.  Thus, in Rashad's view, the Defendants conspired to conceal Wheeler's wrongdoing.

Rashad's claims are not delineated by count, but by paragraph in his Complaint. In paragraph 28, he asserts that "In the handling of [Rashad's] complaints by [D]efendants Jenkins and Armel, [Rashad] was denied due process of law, was discriminated against because of his race and was subjected to conspiracy and malfeasance of defendants Jenkins, Armel, and Wheeler."

In paragraph 44, Rashad asserts that "[a]s a result of CPS's failure to follow the law and notice the proper authorities upon receipt of [Rashad's] complaint of the abuse/endangerment of his child, [Rashad] was denied due process of law among other damages, and the minor child was subjected to further abuse by Defendant Wheeler." Paragraph 45 alleges that Defendants Flanders, Det. Demoranville, and DCA Lowery conspired to achieve the alleged foregoing deprivation.

In paragraph 59, Rashad claims that, "as a result of [D]efendants Demoranville, Lowery and Flanders conspiracy and malfeasance, [P]laintiff was denied due process of law, was discriminated against on the basis of his race and otherwise denied his constitutional rights."

Lastly, in paragraph 71, Rashad claims that "Defendants Neely and Lowery discriminated against Plaintiff because of Plaintiff's race and denied him due process to fair procedures" because Lowery allegedly advised Demoranville not to arrest Wheeler before the investigation was complete.

Plaintiff prays for monetary, injunctive, and declaratory relief. All Defendants have timely filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), claiming that Rashad has failed to state any claim upon which relief can be granted, and Fed. R. Civ. P. 12(b)(1), claiming a lack of jurisdiction. (Docket Nos. 8, 10, 13, 16, 19, 23).

## LEGAL STANDARDS

### A. Rashad As A Pro Se Litigant

As a threshold matter, pro se litigants are usually entitled to have their pleadings given a liberal construction. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

That rule applies to pro se litigants only because they do not have the assistance of a lawyer in presenting their claims.

Rashad has asserted in his Complaint that he is a lawyer. Hence, his pleadings are not entitled to the lenient treatment accorded litigants who are proceeding without the aid of a lawyer.

The United States Court of Appeals for the Fourth Circuit has not addressed that point directly.  However, in a similar situation, the United States District Court for the Eastern District of Virginia held:  "Plaintiff represents that she is an attorney, a law school graduate, and a member a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded pro se litigants." Gordon v. Gutierrez, No. 1:06cv861, 2006 WL 3760134, at *1 n.1 (E.D. Va. 2006). Other courts have drawn a distinction between pro se attorneys and other pro se parties. See, e.g., Andrews v. Columbia Gas Transmission Corp., 544 F.3d 618, 633 (6th Cir. 2008) (finding the district court did not abuse its discretion by denying special consideration to pro se practicing attorneys); Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001) (" While we are generally obliged to construe pro se pleadings liberally,..., we decline to do so here because [plaintiff] is a licensed attorney")(citation omitted); Holtz v. Rockefeller & Co., 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys

7

such as [plaintiff] typically cannot claim the special
consideration which the courts customarily grant to pro se
parties.")(internal quotations omitted); <u>Godlove v. Bamberger,
Foreman, Oswald, and Hahn</u>, 903 F.2d 1145, 1148 (7th Cir. 1990) (
"Ordinarily, we treat the efforts of <u>pro se</u> applicants gently,
but a <u>pro se</u> lawyer is entitled to no special consideration.");
<u>Harbulak v. Suffolk Cty.</u>, 654 F.2d 194, 198 (2d Cir. 1981)
(finding that pro se attorney was not entitled to special
consideration because plaintiff was a "practicing lawyer who had
the means and the knowledge, or at least the ability to obtain
the knowledge, to recognize" whether his claims were
reasonable); <u>Olivares v. Martin</u>, 555 F.2d 1192, 1194 n.1 (5th
Cir. 1977) ("[Plaintiff] proceeds <u>pro se</u> in his appeal. We
cannot accord him the advantage of the liberal construction of
his complaint normally given <u>pro se</u> litigants because he is a
licensed attorney.") (citation omitted). For the foregoing
reasons, Rashad will not be afforded the liberal and lenient
treatment extended to non-lawyers who are acting <u>pro se</u>.[1]

---

[1] Even if Rashad were to be treated as a non-lawyer (which will
not be the case), the requirement of liberal construction "does
not mean that the court can ignore a clear failure in the
pleading to allege facts which set forth a claim cognizable in a
federal district court." <u>Skelton v. EPA</u>, No. 3:09-1429-MBS,
2009 WL 2191981, at *2 (D.S.C. July 16, 2009) (citing <u>Weller v.
Dep't of Soc. Servs.</u>, 901 F.2d 387 (4th Cir. 1990)). Finally,
the basic pleading standards set by <u>Bell Atl. v. Twombly</u>, 550
U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) that

**B.    Fed. R. Civ. P. 12(b)(1)**

A party may file a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). If a court finds that it does not have subject matter jurisdiction over the case or controversy, it must dismiss the action. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Of course, the plaintiff bears the burden of establishing that federal jurisdiction is proper. Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012).

Challenges to subject matter jurisdiction may be made in two ways. First, a facial challenge to jurisdiction may be made by arguing that the complaint does not allege facts that permit the exercise of federal subject matter jurisdiction. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). If that type of challenge is raised, the court must assume that all facts alleged in the complaint are true. Id. Second, the challenge can be made under the theory that the complaint's assertion of subject matter jurisdiction is not true. Id. (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In that event, a court may consider evidence outside the pleadings. Id.

---

foreclose conclusory, factually unsupported claims apply to pro se litigants.

C.    **Fed. R. Civ. P. 12(b)(6)**

All Defendants have filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.   To survive a Rule 12(b)(6) motion to dismiss, a complaint must "provide 'enough facts to state a claim to relief that is plausible on its face.'"   Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).   A court "will accept the pleader's description of what happened . . . along with any conclusions that can be reasonably drawn therefrom," but "need not accept conclusory allegations encompassing the legal effects of the pleaded facts."   Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 1998); Chamblee v. Old Dominion Sec. Co., LLC, No. 3:13cv820, 2014 WL 1415095, at *4 (E.D. Va. Apr. 11, 2014).   "Twombly and Iqbal also made clear that the analytical approach for evaluating Rule 12(b)(6) motions to dismiss requires courts to reject conclusory allegations that amount to mere formulaic recitation of the elements of a claim and to conduct a context-specific analysis to determine whether

10

the well-pleaded factual allegations plausibly suggest an entitlement to relief." Chamblee, 2014 WL 1415095, at *4. In considering a motion to dismiss, the court may "properly take judicial notice of matters of public record." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### NAMED COMMONWEALTH'S ATTORNEYS NOW SEPARATED FROM OFFICE

Defendants Neely and Lowery in their Supplemental Motion to Dismiss (Docket No. 23) argue that they should be dismissed from this matter for the additional reason that neither works for the Spotsylvania County Commonwealth's Attorney's Office any longer and were sued only in their official capacities. (Docket No. 24). "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." Kentucky v. Graham, 473 U.S. 159, 166 n.11 (1985)(citing Fed. R. Civ. P. 25(d)(1)). For this reason, the Court will grant DEFENDANTS LOWERY'S AND NEELY'S SUPPLEMENTAL MOTION TO DISMISS (docket No. 23). However, because Fed. R. Civ. P. 25(d)(1) requires substitution of the new officials, Rashad's claims against Neely and Lowery will be dismissed as against their successors on other grounds. See infra.

### JURISDICTION:  SOVEREIGN IMMUNITY

11

All motions to dismiss for subject matter jurisdiction can be granted for the simple reason that Rashad has not responded to them in any way. For that reason alone, Rashad has not carried his burden to establish subject matter jurisdiction.[2] But that would leave the issue of jurisdiction open so it is preferable to address that issue directly.

Rashad has sued each Defendant in his or her official capacity, seeking monetary relief in the form of compensatory and punitive damages, injunctive relief, and declaratory relief.[3] (Docket No. 1 ¶ 78-79). All Defendants seek dismissal of such claims for monetary relief pursuant to Fed. R. Civ. P. 12(b)(1) on the basis that such claims are barred by the Eleventh Amendment of the United States Constitution because those claims are against the Commonwealth.

The jurisdiction of federal courts is defined by Article III of the United States Constitution. "The Eleventh Amendment limits the Article III jurisdiction of the federal courts to

---

[2] The only pleading that Rashad has filed since filing his Complaint is a document entitled MOTION TO STRIKE, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER (Docket No. 19). That pleading was filed after the various motions to dismiss, inter alia, for lack of jurisdiction were filed (Docket Nos. 8, 10, 13 and 16), but Rashad's pleading does not address subject matter jurisdiction.

[3] Lowery and Neely no longer hold the offices that they held at the time of the events complained of, and so Rashad's claims will be treated as against the new officers who assumed Lowery and Neely's positions and considered below.

hear cases against states and state officers acting in their official capacities." Kitchen v. Upshaw, 286 F.3d 179, 183-84 (4th Cir. 2002). "Eleventh Amendment immunity does not extend to mere political subdivisions of a [s]tate such as counties or municipalities," but does confer immunity "on an arm of the [s]tate." Id. at 184. Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). As a result, an "official capacity" suit against a state official for monetary relief "is no different from a suit against the [s]tate itself." Id. In contrast, a suit against a state official in his or her individual capacity, which seeks to impose personal liability, is not a suit against the state. Hafer v. Melo, 502 U.S. 21, 27 (1991).

In Virginia, Sheriffs and Commonwealth's Attorneys are constitutional officers. See Va. Const. Art. VII § 4 ("There shall be elected by the qualified voters of each county and city a treasurer, a sheriff, an attorney for the Commonwealth, a clerk,..., and a commissioner of revenue."); Va. Code Ann. § 15.2-1609; Brown v. Brown, No. 7:99-00275, 2000 U.S. Dist. LEXIS 21002, at *5 (W.D. Va. Feb. 22, 2000), rev'd and remanded on other grounds, Brown v. Wiita, 7 Fed. Appx. 275 (4th Cir. 2001); see also Harris v. Hayter, 970 F. Supp. 500 (W.D. Va.

1997); Blankenship v. Warren Cty., 918 F.Supp. 970, 974, on recons., 931 F. Supp. 447, 449 (W.D. Va. 1996); McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890, 893 (E.D. Va. 1992). Further, it is well-settled in Virginia that Sheriffs, Sheriff Departments, and Commonwealth's Attorneys are "arms of the Commonwealth of Virginia." Blankenship, 918 F. Supp. at 974; Harbison v. Virginia, No. 3:10cv297, 2010 WL 3655980, at *4 (E.D. Va. Aug. 11, 2010) (holding that Commonwealth's Attorneys "are more closely related to the state than to their local entities, and each are state officials entitled to Eleventh Amendment immunity").

Because the Sheriff and the Commonwealth's Attorney are constitutional officers, the Commonwealth would be liable to pay adverse judgments against the Sheriff or the Commonwealth's Attorney in an official capacity. In other words, a suit against the Sheriff or the Commonwealth's Attorney in his or her official capacity is in fact a suit against the Commonwealth. Unless the Commonwealth has abrogated or waived immunity, Eleventh Amendment protection applies. See Harris, 970 F. Supp. at 502. There is no evidence of abrogation or consent to suit as to the claims in this case. Consequently, Jenkins, Armel, Wheeler, Harris, Demoranville, Neely, Lowery, Neely's successor,

and Lowery's successor are immune from suit for claims for monetary damages against them in their official capacities.[4]

Further, the Virginia Code provides that, "[t]here shall be a local department of social services for each county or city under the supervision and management of a local director" and "[t]he local director shall act as agent for the Commissioner in implementing the provisions of federal and state law and regulation." Va. Code Ann. § 63.2-324, -333; see also Fields v. Prater, 566 F.3d 381, 383 (4th Cir. 2009) (explaining Virginia's system for administering social services). Courts have consistently held that local departments of social services enjoy the protection of sovereign immunity due to the state's high level of control and state law's treatment of the department as an arm of the state. See Kincaid v. Anderson, No. 1:14CV00027, 2015 WL 3546066, at *2-3 (W.D. Va. June 8, 2015); Nelson v. Herrick, No. 3:11-cv-00014, 2011 WL 5075649, at *8-11 (W.D. Va. Oct. 26, 2011); Doe v. Mullins, No. 2:10CV00017, 2010 WL 2950385, at *1 (W.D. Va. July 22, 2010); Perry v. Carter, No. CIVA297-CV-893, 1998 WL 1745365, at *8 (E.D. Va. July 27, 1998). Accordingly, as employees of the Spotsylvania County DSS, Crooks and Flanders are entitled to Eleventh Amendment immunity for

---

[4] Virginia does permit suits for certain kinds of claims, but Rashad does not assert that he has acted so as to proceed in the manner permitted by Virginia law so the Court need not consider whether any of Rashad's claims might be redressable thereunder.

15

claims against them in their official capacities for monetary damages.

For the foregoing reasons, the Court lacks subject matter jurisdiction over all claims for monetary damages against all Defendants, and those claims will be dismissed with prejudice. Of course, to the extent that Rashad seeks declaratory judgment and injunctive relief against Defendants in their official capacity, there is subject matter jurisdiction. See Ex. Parte Young, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar a suit against a State official for prospective injunctive relief); Bragg v. W. Va. Coal Ass'n, 248 F.3d 275, 292 (4th Cir. 2001) ("[T]he Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law.").

## JURISDICTION: STANDING AS TO CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

In his Complaint, Rashad, rather vaguely and in conclusory fashion, describes his claims against Jenkins, Armel and Wheeler, as a denial of due process, discrimination by virtue of race and conspiracy and malfeasance (Compl. ¶ 28). For his claims against the DSS Defendants Crooks and Flanders, the Complaint cast the claim as a denial of due process (Compl. ¶ 44). The claims against Harris and Demoranville are for denial

16

of due process and racial discrimination (Compl. ¶ 59).  And, as to Neely and Lowery, the claims are for denial of due process and race discrimination (Compl. ¶ 77).

The relief sought is a declaration that Rashad's son has been abused by riding in Wheeler's lap in a police car (Compl. ¶ 75) and that DSS acted improperly in handling Rashad's complaint about that abuse (Compl. ¶ 76).  He also seeks injunctive relief to "enjoin defendants from further violations of his rights." (Compl. ¶ 77).

The Defendants contend that, on its face, the Complaint establishes that Rashad does not have standing to pursue the non-damages.  That too is a jurisdictional issue.

Article III of the Constitution limits the power of federal courts to deciding "cases" and "controversies." This requirement ensures the presence of the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204 (1962). Defendants challenge Article III jurisdiction on the basis that Plaintiff does not have standing to pursue the claims for declaratory and injunctive relief.

The doctrine of standing is an integral component of the case or controversy requirement. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). There are three components of

17

constitutional standing: (1) the plaintiff must suffer, or have
suffered, an actual or threatened injury that is not conjectural
or hypothetical; (2) the injury must be fairly traceable to the
challenged conduct; and (3) a favorable decision must be likely
to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S.
555, 560-61 (1992). Rashad, as the party attempting to invoke
federal jurisdiction, bears the burden of establishing standing.
See Miller, 462 F.3d at 316. The standing requirement "ensures
that a plaintiff has sufficient personal stake in a dispute to
render judicial resolution appropriate" and "tends to assure
that the legal questions presented to the court will be
resolved, not in the rarefied atmosphere of a debating society,
but in a concrete factual context conducive to a realistic
appreciation of the consequences of judicial action." Piney Run
Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., 268 F.3d 255, 262
(4th Cir. 2001)."The presence of a disagreement, however sharp
and acrimonious it may be, is insufficient by itself to meet
Art. III's requirements." Charles v. Diamond, 476 U.S. 54, 62
(1986). Accordingly, the plaintiff must "show that he
personally has suffered some actual or threatened injury as a
result of the putatively illegal conduct of the other party."
Id. at 62 (quoting Gladstone, Realtors v. Vill. of Bellwood, 441
U.S. 91, 99 (1979)).

18

The character of the injury is essential to the standing inquiry.  Rashad has alleged no facts to demonstrate that Wheeler's actions caused him any concrete or particularized injury.  Wheeler's adulterous affair with Rashad's wife does not give rise to an injury-in-fact that is cognizable as a constitutional injury or as a deprivation of federal rights.[5] Any injury that might be attributable to Wheeler's conduct in driving with Rashad's seven-year-old son on his lap would be to the child, not to Rashad. The son is not a plaintiff. Therefore, Rashad has no standing to bring claims against Wheeler.

Nor has Rashad alleged any facts to show that Armel and Jenkins' failure to reprimand Wheeler caused Rashad any concrete or particularized injury.

> When the suit is one challenging the
> legality of government action or inaction,
> the nature and extent of facts that must be
> averred . . . or proved . . . in order to
> establish standing depends considerably upon
> whether the plaintiff is himself an object
> of the action . . . at issue. . . . When . .
> . a plaintiff's asserted injury arises from
> the government's allegedly unlawful
> regulation (or lack of regulation) of
> *someone else*, much more is needed.

Lujan, 504 U.S. at 561-62 (emphasis in original). Here, Rashad does not meet this standard because any outcome resulting from

---

[5] Whether Rashad has some injury that is cognizable in the state courts is not before this Court and is not pleaded as an injury in the Complaint.

the investigation would affect Wheeler and Wheeler alone. The outcome of Armel and Jenkins' investigation did not "affect the plaintiff in a personal and individual way" because Rashad was not the "object of the action . . . at issue." Id. at 560 n.1, 561. For the same reasons, Rashad fails to allege facts to demonstrate that the failures of Demoranville and Harris to arrest Wheeler or the decisions of Neely and Lowery in failing to prosecute Wheeler caused Rashad any concrete or particularized injury. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution."); Turner v. Dotsun, No. CIVA RDB-05-1878, 2005 WL 4898860, at *3 (D. Md. Dec. 8, 2005), aff'd sub nom., Turner v. Dotson, 180 F. App'x 484 (4th Cir. 2006) (finding that plaintiff failed to allege any injury occurring to him as a result of the failure to prosecute his assailant). The decisions of these Defendants only affect the rights of Wheeler, and Rashad is not the "object of the action . . . at issue." Lujan, 504 U.S. at 561.

Finally, Rashad has alleged no facts to show that the alleged failures of Crooks and Flanders to follow reporting protocol caused him any injury. Rashad himself called and reported the complaint to the Spotsylvania Sheriff's Office. Thus, although Crooks and Flanders failed to report, the

complaint ultimately made its way to the Sheriff's Office and was handled accordingly. Rashad has not suffered a cognizable injury because Crooks and Flanders' failure to notify the law enforcement authorities was remedied by Rashad and the case proceeded as if the DSS protocol had properly been followed.

For the foregoing reasons, Rashad lacks standing to prosecute the claims against any Defendant for declaratory or injunctive relief. Accordingly, the Court lacks jurisdiction over those claims as well.

## CONCLUSION

For the foregoing reasons, DEFENDANT WHEELER'S MOTION TO DISMISS (Docket No. 8), DEFENDANTS' JOINT MOTIONS TO DISMISS (Docket No. 10), DEFENDANTS' RULE 12(b)(1) and 12(b)(6) MOTION [sic] TO DISMISS (Docket No. 13), DEFENDANTS GAIL CROOKS' AND JAYME FLANDERS' MOTION TO DISMISS (Docket No. 16) and DEFENDANTS LOWERY'S AND NEELY'S SUPPLEMENTAL MOTION TO DISMISS (Docket No. 23) will be granted insofar as they are based on a lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and will otherwise be denied as moot and the Complaint herein will be dismissed.[6] The plaintiff's MOTION TO STRIKE, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER (Docket No. 19) will be denied as moot.

---

[6] Because there is no subject matter jurisdiction, the motions to dismiss under Fed. R. Civ. P. 12(b)(6) will not be addressed.

The Clerk shall send a copy of the Memorandum Opinion to the plaintiff.

It is so ORDERED.

_____/s/_____ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  March __3__ , 2016